**Jimmie BURDEN, Jr., Petitioner,**

v.

**Walter ZANT, Warden, Respondent.**

**Civ. A. No. 88–6–3–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

July 12, 1988.

Millard Farmer, Atlanta, Ga., for petitioner.

Paula K. Smith, Atlanta, Ga., for respondent.

OWENS, Chief Judge:

On January 15, 1988, petitioner Jimmie Burden, Jr. filed this 28 U.S.C. § 2254 habeas petition attacking his convictions in the Superior Court of Washington County, Georgia, on four counts of murder, and also attacking the three death sentences and one life sentence that he received for committing these offenses. Petitioner was represented by able counsel, Joseph M. Nursey, Esq. and Millard C. Farmer, Esq. Because of this representation, the court's

normal practice of appointing counsel was not necessary. The parties have thoroughly briefed the questions involved in petitioner's case, and after reviewing the entire record, the court is now prepared to render a decision on Mr. Burden's petition.

## I. Procedural History

Upon a trial by jury that commenced on March 1, 1982, petitioner was found guilty on all four counts of murder. The jury found the existence of four statutory aggravating circumstances and sentenced petitioner to four death sentences pursuant to O.C.G.A. § 17–10–30(b)(2). On direct appeal, the Supreme Court of Georgia affirmed the four murder convictions, affirmed three of the four death sentences, but with respect to the death sentence imposed for the murder of Louise Wynn, found that her murder was "mutually supporting" the imposition of the death sentence for the other three murders, and, therefore, only a life sentence was appropriate on this count. *See Burden v. State*, 250 Ga. 313, 297 S.E.2d 242 (1982). The Supreme Court of the United States refused to grant certiorari to review this decision of the Georgia Supreme Court.

Petitioner filed his first petition for writ of habeas corpus on July 13, 1983, in the Superior Court of Butts County. An evidentiary hearing was held on October 24, 1983, at which time petitioner was afforded an opportunity to present evidence to support his petition. Millard L. Farmer, Esq., Joseph M. Nursey, Esq. and Kenneth Rose, Esq. assisted petitioner in presenting his case. Following this hearing a second evidentiary hearing was set for March, 1984. Before that hearing could be held, however, petitioner notified the state court, in a letter dated March 1, 1984, that he had no additional evidence, other than an additional affidavit, to present to the court. The matter was thereafter briefed by the parties, and the Superior Court of Butts County denied relief in an order dated September 5, 1984. This order was subsequently amended on September 20, 1984, to find that petitioner had procedurally defaulted under Georgia law in bringing his jury composition claim. On March 5, 1985, the Supreme Court of Georgia denied an application for a certificate of probable cause to appeal, and the Supreme Court of the United ed States again denied certiorari.

Petitioner then filed a second petition for writ of habeas corpus in the Butts County Superior Court, in which he raised a single claim, namely, that Georgia's death penalty statute was discriminatorily applied against black people and persons accused of killing white people. The state habeas court found this claim to be successive, and dismissed the petition. The Supreme Court of Georgia denied an application for a certificate of probable cause to appeal on March 11, 1987. Finally, petitioner has filed the instant petition asserting claims previously raised in both his direct appeal and in his first state habeas petition. Having exhausted his state remedies, these claims are ripe for review.

## II. The Evidence

The court has read the entire trial transcript, the transcripts of the hearings held in the state court system, the briefs of the parties filed in both the state courts and in this court, and the various orders entered by the state courts affirming petitioner's convictions. After reviewing this information the court finds that the Georgia Supreme Court's description of the evidence against Mr. Burden in *Burden v. State*, 250 Ga. 313, 297 S.E.2d 242 (1982), accurately reflects what the evidence, viewed in the light most favorable to the prosecution, showed. It is, therefore, set out here as the court's *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), finding:

On the evening of August 15 and morning of August 16, 1974, four bodies were recovered from Smith's Pond in Washington County, identified as Louise Wynn and her three children, ages 2, 3 and 4. The autopsies revealed that Louise Wynn died from multiple blows to the head; that Marvin, age 4, and James, age 2, died from drowning; and that Melinda, age 3, died from strangulation. Louise was clothed only in an undergarment and a dress torn in half. The crime scene

revealed an area of disturbed pine straw, possibly evidencing a struggle. Investigators also discovered there an automobile lug wrench with what appeared to be bloodstains.

After extensive investigation, law enforcement officials were unable to fix upon a suspect, and the case was placed in the unsolved file some two years later. In late 1981, Henry Lee Dixon, a nephew of Burden, came forward with information leading to the arrest and indictment of this defendant.

Henry Lee Dixon testified that on August 13, 1974, Burden came to his house and asked to ride to town with him. He then directed Dixon to a liquor store where Burden purchased a case of beer and some liquor. Burden next directed Dixon to drive to Louise Wynn's house. Burden, who had been drinking heavily all the while, went into the house, and after about 15 minutes returned with two older children, followed by Louise Wynn, who was carrying a baby. Burden told Dixon to drive, while he continued to drink, kissing and hugging Louise Wynn in the back seat. Dixon was then directed to stop along a dirt road leading to Smith's Pond, where Burden and the four victims got out of the car. Burden took from his car a shotgun, fishing poles and bait, and told Dixon to return later to pick them up. When Dixon returned he saw Burden walking down the road, he stopped and asked where the others were. Burden first said that Louise became angry and had gone to her mother's house. After Dixon wanted to go and get Louise Wynn, Burden said "he had [messed] up," that she "didn't act right" and he "hit her side the head with something" and that "she fell in the pond or he throwed her in the pond one." Dixon then asked about the children, and Burden replied, "I reckon I damn well know where they are at, too." When Dixon suggested going back to the pond, Burden threatened him with a shotgun if he ever related the event to anyone.

The day after the bodies were discovered, Burden broke a pool cue over Dixon's head when he saw him talking with others, and again warned him not to mention the events of Tuesday.

Several witnesses testified that Burden and Louise Wynn were keeping social company with each other, having seen them together at various places just prior to Louise Wynn's death.

Two other witnesses testified as to physical assaults and attempted sexual assaults made upon them by Burden at times when he had been drinking. One such witness attributed to Burden the threat: "[H]e told me that he was going to throw me in a pond like he did somebody else."

*See Burden,* 250 Ga. 313–14, 297 S.E.2d 243–44.

### III. Allegations of Error

Petitioner Burden has presented eight grounds for habeas relief. His eight allegations of error are: (1) that Mr. Burden's trial counsel maintained an actual conflict of interest in his representation of Mr. Burden; (2) that Mr. Burden was denied effective assistance of counsel; (3) that the grand and traverse jury pools from which a jury was drawn in Mr. Burden's case was unconstitutionally composed; (4) that the trial court unconstitutionally admitted evidence of wholly unrelated "bad acts" allegedly committed by the petitioner; (5) that the trial judge improperly deprived the jury of its authority to sentence Jimmie Burden to either concurrent or consecutive life sentences; (6) that prosecutorial misconduct rendered Jimmie Burden's sentences of death fundamentally unfair; (7) that there was insufficient evidence to support the guilty verdict; and (8) that the jury instructions at the penalty phase of Jimmie Burden's trial failed to adequately guide and focus the jury's consideration of mitigating circumstances. The first three of these allegations of error constitute a claim under the Sixth Amendment for effective assistance of counsel and will be dealt with together. The remaining allegations of error will thereafter be discussed separately.

A. Whether petitioner received effective assistance of counsel

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984), the Supreme Court determined that the standard to be applied in determining whether a petitioner has received effective assistance of counsel is whether the attorney's performance was deficient *and* whether that deficient performance prejudiced the defense. *See Porter v. Wainwright,* 805 F.2d 930, 933 (11th Cir.1986), *cert. denied* —— U.S. ——, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Claims of ineffective assistance of counsel must be reviewed from the perspective of counsel, taking into account all of the circumstances of the case, but only as those circumstances were known to him at the time in question. *Id.* at 936 (quoting *Washington v. Watkins,* 655 F.2d 1346, 1356 (5th Cir.1981) (Unit A), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982)). This standard requires that the circumstances as known to petitioner's attorney at the time of the trial be reflected in the record. With respect to counsel's duty to avoid conflicts of interest, representation of the criminal defendant entails certain basic duties. Counsel's function is to assist the defendant, and hence counsel owes the client a duty of loyalty, a duty to avoid conflicts of interest. *See Cuyler v. Sullivan,* 446 U.S. 335, 346, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980). From counsel's function as assistant to the defendant derive the over arching duty to advocate the defendant's cause and the more particular duties to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *See Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066.

■ Conflicts of interest necessarily implicate a breach of counsel's duty of loyalty which is "perhaps the most basic of counsel's duties." *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067. To establish a Sixth Amendment violation, petitioner Burden must demonstrate that both an actual conflict of interest existed and that such conflict adversely affected the adequacy of Mr. Moses' representation. *Id. See also Smith v. White,* 815 F.2d 1401, 1404 (11th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 181, 98 L.Ed.2d 133 (1987); *Porter v. Wainwright,* 805 F.2d 930, 939–40 (11th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987); and *Stevenson v. Newsome,* 774 F.2d 1558, 1562 (11th Cir.1985), *cert. denied,* 475 U.S. 1089, 106 S.Ct. 1476, 89 L.Ed.2d 731 (1986).

The first question the court must answer then is whether or not Mr. Burden has demonstrated an actual conflict of interest. "A mere possibility of conflict of interest does not rise to a level of a Sixth Amendment violation." (citations omitted). *Smith v. White,* 815 F.2d at 1404. In *Stevenson v. Newsome,* the court of appeals quoted from *Barham v. United States,* 724 F.2d 1529, 1535 (11th Cir.1984), which stated:

> If a defense owes duties to a party whose interests are adverse to those of the defendant, then an actual conflict exists. Interests of the other client and the defendant are sufficiently adverse if it is shown that the attorney owes a duty to the defendant to take some action that could be detrimental to his other client.

■ In this case petitioner has demonstrated that the Washington County Public Defender's Office was initially brought in to represent Mr. Dixon after he and Mr. Burden were charged with the murders of Ms. Wynne and her three children. At the time of their arrest, the Public Defender's Office of the Middle Judicial Circuit consisted of two attorneys, Mr. Ken Kondritzer and Mr. Mickey Moses. Mr. Kondritzer represented Mr. Dixon at the committal hearing held in his case. The result of this hearing was that the state court found insufficient evidence to bind Mr. Dixon over on the murder charges, but held him in jail under a material witness bond. It was shortly after this committal hearing that Mr. Kondritzer resigned as Public Defender for the circuit and Mr. Moses was appointed to replace him. Mr. Moses was, thus, given all of Mr. Kondritzer's files, which included Mr. Dixon's case. No charges were pending against Mr. Dixon at the time Mr. Moses was given Mr. Dixon's file. Acting in his role as chief public

defender, Mr. Moses went on to defend Mr. Burden at trial.

Looking at the evidence presented by petitioner in the state habeas hearing, the court finds that he has failed to demonstrate either an actual conflict of interest or that this alleged conflict adversely affected the adequacy of Mr. Moses' representation of Mr. Burden. When Mr. Moses was appointed to take Mr. Kondritzer's place as chief public defender, he acceded to all of the files in the public defender's office, both pending and closed. Of course, Mr. Dixon had previously been represented by the public defender's office in Washington County, but at the time Mr. Moses took possession of Mr. Dixon's file, the charges against Mr. Dixon had already been dropped by court action. Petitioner has presented no evidence to show that Mr. Moses reviewed Mr. Dixon's file, nor was there any testimony to the effect that certain confidences gained by Mr. Kondritzer during his representation of Mr. Dixon had been, in any, way, divulged to Mr. Moses. Finally, Mr. Moses was under no obligation to take any action to represent Mr. Dixon in his status as a material witness that could be viewed as detrimental to his representation of Mr. Burden. In fact, at the time of Mr. Burden's trial, the charges against Mr. Dixon had already been dropped; Mr. Dixon, through no help of Mr. Moses, had been granted immunity from prosecution; and the decision to hold Mr. Dixon under a material witness bond had already been rendered. Mr. Moses, therefore, could take no action to harm Mr. Dixon, and was thus left unbridled in his defense of Mr. Burden. The court is simply not prepared to find that a public defender's office is absolutely barred from defending any criminal defendant in a criminal trial wherein a potentially adverse witness who has been represented earlier by some attorney in that office may be called to testify. Petitioner must set out additional conflict evidence before he would be entitled to succeed on this type of Sixth Amendment claim. Accordingly, because petitioner has failed to present evidence of an actual conflict, the court finds that there was no actual conflict to render Mr. Moses' performance ineffective.

Even if Mr. Moses was acting under a conflict of interest at the time of his representation of Mr. Burden, petitioner has failed to show that Mr. Moses failed to do something that an attorney not acting under a conflict would otherwise have done. Mr. Moses brought out evidence of Mr. Dixon's bad character; he inquired into the fact that Mr. Dixon had once been charged with the same crimes alleged against Mr. Burden, and that as a result of his testimony he was not going to be prosecuted; he cross-examined Mr. Dixon about being in custody under a material witness bond; he brought out prior inconsistent statements made by Mr. Dixon; and he generally attempted to discredit Mr. Dixon's testimony. The court perceives of no issues that were not brought out by Mr. Moses that another attorney might have developed. Absent some evidence of actual prejudice, this court cannot find ineffective assistance of counsel. *Smith*, 815 F.2d at 1404.

■ The second allegation of ineffective assistance derives from Mr. Moses' failure to challenge the Washington County grand and traverse juries used to indict Mr. Burden. At the state evidentiary hearing, petitioner's only evidence of discrimination in the selection of the juries used in Washington County was an affidavit signed by Mr. Kondritzer stating that he found substantial discrepancies in the jury pools being utilized by Washington County during this time period. *See* Affidavit of Kenneth Kondritzer dated February 29, 1984. Mr. Moses and Mr. Malone, the District Attorney for the Middle Judicial Circuit of Georgia, on the other hand, testified that they were unaware of any particular problems with the jury pools used in Mr. Burden's case, that they generally kept abreast of the racial percentages being selected for jury duty, and that the percentages being chosen appeared generally to be in line with the relevant population statistics. No additional evidence was proffered to this court beyond the evidence presented in the state court.

**1046**

Before this court can find ineffective assistance in not bringing a jury challenge claim, the court must first find that such a challenge would have been successful. Mr. Farmer and Mr. Nursey have had significant experience in bringing jury challenges, yet they have made no independent effort in getting relevant statistical data beyond the conclusory affidavit of Mr. Kondritzer. While the court recognizes that the state refused to provide petitioner with unlimited funds to pursue his jury challenge claim, the court believes that there were alternative methods available to petitioner and his counsel that would have allowed him to develop facts necessary to support a jury challenge claim. The burden being on the petitioner to prove discrimination in the selection of the grand and traverse juries, the court is unwilling to presume discrimination in order to decide whether failure to bring such a claim was ineffective. Accordingly, the court refuses to find that by not bringing a jury challenge claim, Mr. Moses' representation was ineffective. Petitioner having failed to show that a jury challenge claim would have been meritorious, petitioner simply has not met his burden in making out such a claim.

Finally, the court has reviewed Mr. Moses' overall performance in Mr. Burden's trial and in the direct appeals taken by him, and finds that Mr. Moses' performance was more than adequate to satisfy the Sixth Amemdment's requirement of effective assistance of counsel. Petitioner has not shown any facts to support his claim that Mr. Moses' representation fell below an objective standard of reasonableness, nor has he shown any prejudice resulting to his defense as a result of this representation. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. Because he has utterly failed in proving these elements, petitioner's claim of ineffective assistance of counsel is totally without merit, and, therefore, must be denied.

B. Evidence of Bad Acts

Petitioner also contends that the trial court's introduction into evidence of certain bad acts allegedly committed by him was impermissibly prejudicial and denied him

due process of law. In order to find a violation of petitioner's due process rights, evidentiary errors must be "of such magnitude as to deny fundamental fairness to the criminal trial, thus violating the due process clause." *See Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir.), *cert. denied*, 429 U.S. 850, 97 S.Ct. 139, 50 L.Ed.2d 124 (1976); and *Hall v. Wainwright*, 733 F.2d 766, 770 (11th Cir.1984), *cert. denied*, 471 U.S. 1107, 105 S.Ct. 2344, 85 L.Ed.2d 858 (1985). The district court must decide whether the evidence is "material in the sense of a crucial, critical highly significant factor." *See Hills*, 529 F.2d at 401; and *Osborne v. Wainwright*, 720 F.2d 1237, 1238–39 (11th Cir.1983). Overwhelming evidence of guilt defeats the argument that such evidence constitutes a "crucial, critical, highly significant factor," and if overwhelming evidence of guilt is shown, any constitutional error would simply be harmless. *See Rose v. Clark*, 478 U.S. 570, 576–79, 106 S.Ct. 3101, 3105–07, 92 L.Ed.2d 460, 469–71 (1986).

The state court has found that the introduction of the "bad acts" evidence was relevant as a matter of Georgia law, and this court cannot say that its admission denied Mr. Burden fundamental fairness under these circumstances. *See Jameson v. Wainwright*, 719 F.2d 1125, 1127 (11th Cir.1983), *cert. denied*, 466 U.S. 975, 104 S.Ct. 2355, 80 L.Ed.2d 827 (1984). Further, even if this evidence was admitted in violation of Georgia law, there was still no violation of due process. The overwhelming weight of the evidence of Mr. Burden's guilt defeats his argument that evidence of the assaults committed by him at a later date constituted a "crucial, critical, highly significant factor" in the case against him. Accordingly, because this court must view the evidence in the light most favorable to the prosecution, and because the evidence against Mr. Burden viewed in this light is overwhelmingly against him, the court must conclude that the introduction of these bad acts did not deprive petitioner of his right to due process of law.

**C. The trial judge's statement regarding concurrent or consecutive life sentences to the jury**

At the penalty phase of Jimmie Burden's trial, the trial judge instructed the jury that it had no say as to whether any life sentences imposed would run concurrently or consecutively. Petitioner contends that it was within the discretion of the jury to decide the question of whether Mr. Burden should be given concurrent or consecutive life sentences. He also cites certain Georgia law which states that a jury is authorized to decide whether the life sentences it imposes should run concurrently or consecutively. *See Anglin v. State,* 244 Ga. 1, 257 S.E.2d 513 (1979). The state has shown, though, that the Georgia Supreme Court's decisions supporting petitioner's contentions were based upon an erroneous application of the law, and that these cases were subsequently overruled in 1985. *See Welch v. State,* 254 Ga. 603, 331 S.E.2d 573 (1985). Petitioner contends that despite this subsequent action by the Georgia Supreme Court, the law in 1981 was that a jury could require either consecutive or concurrent life sentences to be served if mercy was recommended. In this court's opinion, however, the fact that the law was being applied improperly before 1985 should not give petitioner a due process claim to have it so applied in his case. Habeas relief on this ground, therefore, must be denied.

**D. Prosecutorial misconduct**

Petitioner argues that certain statements made in the sentencing phase of Jimmie Burden's trial were so egregious that it rendered the death sentences in his case fundamentally unfair. After reviewing the statements in question, the court finds that the remarks made were not sufficiently improper to warrant habeas relief. Taken as a whole they were not so egregious as to render the death sentences fundamentally unfair, thus, in violation of his right to due process. Petitioner's cited case of *Brooks v. Kemp,* 762 F.2d 1383 (11th Cir. 1985), *cert. denied,* — U.S. ——, 107 S.Ct. 3240, 97 L.Ed.2d 744 (1986), does not require reversal of petitioner's convictions.

**E. Insufficient evidence to support the guilty verdict**

Viewing the evidence in the light most favorable to the prosecution, the court is persuaded that there was ample evidence to convict petitioner of the four murders involved in this case. Furthermore, the gruesome manner in which the victims were killed supports the sentences of death that he was given by the jury that found him guilty of committing those crimes. Accordingly, this allegation of error is also meritless.

**F. The jury instructions—explanation of mitigating circumstances**

After reviewing the instructions given on the issue of mitigation and considering the argument of the attorneys in this case, the court finds that there is no merit to petitioner's contentions that the instructions given in his trial were inadequate under the standards set out in *Peek v. Kemp,* 784 F.2d 1479, 1494 (11th Cir.1986), and *Spivey v. Zant,* 661 F.2d 464 (5th Cir.1981) (Unit B), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). Finding no error, habeas relief must be denied on this final ground.

In conclusion, upon overwhelming evidence of guilt, this court finds that petitioner has been constitutionally convicted with effective assistance of counsel for the four murders he was charged with, and further finds that he was constitutionally sentenced to three death sentences and one life sentence for committing these offenses. His petition for writ of habeas corpus having been found meritless in all respects, is, therefore, DENIED in its entirety.