# BURDEN *v.* ZANT, WARDEN

No. 90–5796.   Decided February 19, 1991

PER CURIAM.

Petitioner argues that the Court of Appeals, in rejecting his conflict-of-interest claim, improperly failed to give a pre-

sumption of correctness to a state-court factual finding, in violation of 28 U. S. C. § 2254(d). We agree, and accordingly the motion for leave to proceed *in forma pauperis* and the petition for a writ of certiorari are granted.

On August 1, 1981, petitioner was arrested on a charge of burglarizing his sister's house. Kenneth Kondritzer, a local public defender in a two-attorney public defender's office, was appointed soon thereafter to represent petitioner. While petitioner was awaiting trial on the burglary charge, his nephew, Henry Lee Dixon (the son of the alleged burglary victim), gave a statement to the police implicating petitioner in the unsolved 1974 murders of a woman and her three children. Based upon Dixon's statement, the police obtained warrants on or about September 15, 1981, charging both petitioner and Dixon with the murders. Kondritzer began representing Dixon at about that time, while continuing to represent petitioner. Dixon, however, was never indicted for the murders. At a preliminary hearing on November 19, 1981, in which Kondritzer appeared on Dixon's behalf, the judge ruled that although the State had sufficient evidence to hold Dixon as a material witness against Burden, it did not have sufficient evidence to hold him for the murders.

Petitioner was indicted for the murders on December 7, 1981, while he was still represented by Kondritzer. Kondritzer, however, left the public defender's office at the end of December 1981, and the other public defender in the office, Michael Moses, assumed responsibility for representing petitioner.

After a trial in March 1982, petitioner was convicted of four counts of murder and was sentenced to death. Dixon's testimony at trial provided the sole evidence directly linking petitioner to the murders. 903 F. 2d 1352, 1356–1357 (CA11 1990). In addition, both Dixon on cross-examination and the prosecutor in his closing argument acknowledged that Dixon

was testifying under a grant of immunity,[1] a fact expressly credited by the trial court in its mandatory post-trial report, see Record, Respondent's Exh. 1, p. 54.[2]

After exhausting his state remedies, petitioner filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Georgia, alleging, *inter alia*, that he did not receive effective assistance of counsel because his counsel labored under a conflict of interest. Although the District Court credited petitioner's contention that Dixon had received immunity in exchange for his agreement to testify against petitioner, 690 F. Supp. 1040, 1045 (1988), it nevertheless denied relief because petitioner had not shown an adverse impact on the representation of his *trial* counsel, Moses. *Ibid.*

On appeal, the United States Court of Appeals for the Eleventh Circuit determined that the record was not sufficient for it to evaluate petitioner's conflict-of-interest claim, and therefore remanded to the District Court for an evidentiary hearing on that issue, while retaining jurisdiction over the case. 871 F. 2d 956 (1989). At the hearing, Kondritzer testified that while he was representing both petitioner and

---

[1] In response to the question, "[H]ave you been promised anything for your testimony today?" Dixon stated, "Immunity." Record, Respondent's Exh. 1G, p. 649 (trial transcript). The prosecutor likewise acknowledged to the jury, "[W]e may have offered [Dixon] immunity. I think you realize that we did. I'll tell you that we did." Record, Respondent's Exh. 1I, p. 911 (trial transcript).

[2] Under Ga. Code Ann. § 17–10–35(a) (1990), the trial court must file a report in every case in which the death penalty is imposed. Designed to facilitate review by the Georgia Supreme Court, this report must include, *inter alia*, the trial judge's assessment of the prosecution's case at trial. See generally *Gregg* v. *Georgia*, 428 U. S. 153, 167–168 (1976) (joint opinion of Stewart, Powell, and STEVENS, JJ.). The report in petitioner's case notes that Dixon was "[t]he witness most damaging to the defendant's case." Record, Respondent's Exh. 1, p. 54. It also states that "Dixon was granted immunity from prosecution and the jury was properly informed of this fact and an appropriate charge was given by the court to the jury." *Ibid.*

Dixon on the murder charges, he reached "an understanding" with the district attorney that "as long as [Dixon] testified [against petitioner] nothing would happen to him." Civ. Action No. 88–6–3–MAC (MD Ga., Sept. 20, 1989), p. 4. The District Court nevertheless concluded that petitioner had received representation free from a conflict of interest.

The case then returned to the Court of Appeals, which affirmed the District Court's denial of habeas relief. Although the court recognized the potential conflict of interest in Kondritzer's simultaneous representation of petitioner and Dixon, it held that "the conflict never became actual in the sense that Kondritzer's representation of Dixon's interests required him to compromise [petitioner's] interests." 903 F. 2d, at 1359. In addressing petitioner's argument that the dual representation adversely affected petitioner's interests because Kondritzer negotiated an immunity agreement for Dixon, the Court of Appeals stated:

> "[T]he assumption that Dixon received a grant of transactional immunity, negotiated by Kondritzer and the prosecutor in exchange for Dixon's testimony against [petitioner], is without factual support. . . . There is no documentary evidence of any sort that attests to Dixon's having received immunity . . . . Thus, [petitioner] can no longer base his conflict-of-interest claim on the mistaken assumption that the attorney representing him obtained or attempted to obtain immunity for one client in exchange for testimony that was instrumental in the conviction of another." Id., at 1359–1360.

As petitioner argues, the Court of Appeals' finding that Dixon did not testify under an immunity agreement is contrary to the express finding in the state trial court's report that "Dixon was granted immunity from prosecution." Record, Respondent's Exh. 1, p. 54. This finding, made pursuant to statutory directive, see n. 2, *supra*, and based on Dixon's testimony and the prosecutor's closing argument at trial, see n. 1, *supra*, is a determination of historical fact

"presumed to be correct" for purposes of a federal habeas corpus proceeding. See 28 U. S. C. § 2254(d).[3] A habeas court may not disregard this presumption unless it expressly finds that one of the enumerated exceptions to § 2254(d) is met, and it explains the reasoning in support of that conclusion. See *Sumner* v. *Mata*, 449 U. S. 539, 549, 551 (1981). The Court of Appeals did not even *mention* the trial court's finding that Dixon received immunity, much less explain why that finding is not entitled to a presumption of correctness.

Respondent maintains that petitioner "waived" reliance on § 2254(d) in the Court of Appeals by failing sufficiently to emphasize the trial court's finding that Dixon received immunity. This contention mischaracterizes the record. In his first brief to the Court of Appeals, before remand, petitioner repeatedly stated, in support of his conflict-of-interest argument, that Dixon had testified under a grant of immunity. See Brief for Petitioner-Appellant in No. 88–8619, pp. 5, 6, 8, 11, 13–14, 15, 17, 22, 23. Indeed, that factual assertion was the crux of petitioner's argument. In his supplemental letter memorandum, after remand, the immunity agreement was again the central fact supporting his conflict-of-interest claim. The brief began by stating that petitioner did not understand why there was a dispute over Dixon's immunity, since the state trial judge had specifically found that Dixon had testified under a grant of immunity. Letter Memorandum for Petitioner-Appellant in No. 88–8619 (CA11), p. 1; see also *id.*, at 9. Petitioner then asserted that the state court's finding was "entitled to the presumption of correct-

---

[3] Section 2254(d) provides in pertinent part:

"In any proceeding instituted in a Federal court by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination after a hearing on the merits of a factual issue, made by a State court of competent jurisdiction in a proceeding to which the applicant for the writ and the State or an officer or agent thereof were parties, evidenced by a written finding, written opinion, or other reliable and adequate written indicia, shall be presumed to be correct . . . ."

ness." *Ibid.* Thus, it seems clear that petitioner adequately raised the argument below.

Consequently, we reverse and remand so that the Court of Appeals may consider petitioner's conflict-of-interest claim free from its erroneous failure to credit the state trial court's finding that Dixon testified under a grant of immunity.

*It is so ordered.*