

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-3-1995

# Walker v Vaughn

Precedential or Non-Precedential:

Docket 94-1367

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation
"Walker v Vaughn" (1995). *1995 Decisions.* Paper 118.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/118

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT


No. 94-1367



RONALD WALKER,
                              Appellant
                  v.

DONALD T. VAUGHN;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;
DISTRICT ATTORNEY OF PHILADELPHIA COUNTY



On Appeal from the United States District Court
For the Eastern District of Pennsylvania
D.C. No. 92-cv-01616




Argued January 24, 1995

Before:  SLOVITER, Chief Judge, HUTCHINSON
         and LEWIS, Circuit Judges

(Opinion Filed  May 3, 1995 )


Michael J. Kelly  (Argued)
Defender Association of Philadelphia
Federal Court Division
Philadelphia, PA  19106-2414

        Attorney for Appellant

Donna G. Zucker  (Argued)
Office of District Attorney
Philadelphia, PA  19102

        Attorney for Appellees

OPINION OF THE COURT

SLOVITER, Chief Judge.

Appellant Ronald Walker appeals the district court's denial of his petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Walker's petition alleges ineffective assistance of counsel in the state trial and direct appeal, primarily for their failure to press a claim on his behalf under Batson v. Kentucky, 476 U.S. 79 (1986) (barring racially discriminatory use of peremptory challenges by prosecutors). Although we will affirm the ruling of the district court, the procedural history of this case presents an important issue about the procedure to be followed by a federal court reviewing a habeas corpus petition when a dormant state proceeding is reactivated. The relevant procedural facts are necessarily set forth in detail.

I.

Facts and Procedural History

In November 1985, appellant Ronald Walker, armed with a double-barrelled shotgun and a handgun, entered the home of his estranged wife in Philadelphia. Walker proceeded to hold his wife's mother, sister and daughter hostage in the home for a period of approximately twenty-four hours. After a long standoff with police, Walker released the hostages and surrendered. He was then charged with crimes arising out of the incident.

On October 9, 1986, after a jury trial in the Philadelphia Court of Common Pleas, Walker was convicted of three counts of kidnapping, one count of attempted kidnapping, burglary, simple assault and possession of an instrument of crime. The judgment and sentence in the case was entered on May 20, 1987. On April 13, 1989, Walker's conviction was affirmed on direct appeal in an unpublished opinion by the Pennsylvania Superior Court. See Commonwealth v. Walker, 561 A.2d 823 (Pa. Super. Ct. 1989).

Walker did not file a petition for allocatur to the Pennsylvania Supreme Court. Instead, on February 28, 1990 he filed a pro se petition under the Pennsylvania Post Conviction Relief Act (PCRA), 42 Pa. Cons. Stat. Ann. § 9541 et seq. (hereinafter "PCRA action"), alleging that both his trial counsel and his appellate counsel had been ineffective.

Walker's court-appointed counsel in the PCRA action, however, failed to prosecute the PCRA petition promptly, resulting in a delay of more than two years.[1] Thus, on March 19, 1992, Walker filed this petition for habeas corpus in the United States District Court for the Eastern District of Pennsylvania and listed as respondents Donald T. Vaughn by name (the Superintendent of the State Correctional Institute at

---

[1]. Based on the record provided to this court, it appears that between February 1990 and May 1992, the state PCRA court listed the action approximately eleven times in an effort to move the matter towards resolution, but Walker's court-appointed counsel failed to appear on several occasions and arranged continuances of other hearings.

Graterford), the District Attorney of Philadelphia, and the Attorney General of Pennsylvania (hereinafter referred to jointly as the "State"). In his petition, Walker alleged that the delay in the resolution of his PCRA action rendered that action ineffective to protect his rights, and that therefore his failure to exhaust his state post-conviction remedy should be excused.

On April 20, 1992, the state court presiding over the PCRA action scheduled a hearing for July 2, 1992 and issued an order to compel Walker's counsel to attend. The State, in responding on May 14, 1992 to Walker's federal petition, notified the district court of this latest development in the PCRA action and argued that Walker's obligation to exhaust his state remedies should not be excused. On June 5, 1992, the federal magistrate judge issued a Report and Recommendation that, due to the pendency of the PCRA action, Walker's habeas petition should be denied and dismissed without prejudice for failure to exhaust his state court remedies. The district court, however, took no immediate action regarding this Report and Recommendation, and Walker's federal habeas petition remained pending.

Walker's court-appointed PCRA counsel did not appear at the state PCRA hearing on July 2, 1992. The state court therefore took a number of steps, including threatening the imposition of sanctions, in order to force Walker's counsel to appear. While those efforts were largely unsuccessful, Walker's PCRA counsel did file an amended PCRA petition on September 30, 1992. That amended petition, however, was not accompanied by the supplemental memorandum required by Pennsylvania law. After

several additional missed appearances, the state court ordered Walker's PCRA counsel to attend a hearing on December 15, 1992, and warned counsel that he risked being held in contempt if he did not appear on that date.

While the state court was still attempting to compel Walker's state counsel to appear in the PCRA proceedings, the district court ordered the parties in the federal habeas proceeding to appear for a hearing on December 15, 1992 regarding the status of Walker's state PCRA action. The state court then changed its hearing to December 14, 1992, and at that hearing heard testimony on the merits of Walker's PCRA claim.

The following day, December 15, 1992, the district court held its hearing on the magistrate judge's report recommending dismissal of the federal action because Walker had failed to exhaust his state remedies. Walker testified that his PCRA counsel had represented him at the PCRA hearing the previous day, and that his original trial counsel had testified as a witness. The district court made no decision at that time. See Transcript of Proceedings, December 15, 1992, at 32.

On December 22, 1992, the state court removed Walker's court-appointed PCRA counsel, apparently because of his prior lack of diligence, and thereafter appointed a replacement. This marked renewed movement in the PCRA action.

On January 8, 1993, the district court held another hearing, at which Walker's former PCRA counsel testified, and advised the court he had been replaced. See Transcript of Proceedings, January 8, 1993, at 6-8. The district court

acknowledged that "things are beginning to move" in the state proceeding, id. at 16, but expressed doubt about whether the state proceeding would be resolved expeditiously. Id. at 9. After receiving a supplemental brief addressing the exhaustion question,[2] the district court issued an order on January 15, 1993 that disapproved the Report and Recommendation of the magistrate judge and ruled, instead, that the delay in the state PCRA proceeding was sufficient to waive Walker's exhaustion requirement under 28 U.S.C. § 2254(b). The district court then directed Walker to file an amended habeas petition.

On February 1, 1993, with the assistance of his federally-appointed habeas counsel, Walker filed an amended habeas petition raising thirty-one issues. After the State filed a response to the amended petition, the district court ordered Walker to file an offer of proof and brief citation to authority in support of each of the thirty-one claims which Walker intended to pursue. See Order of February 26, 1993. Before Walker responded to the district court's order, his appointed habeas counsel filed a motion to withdraw in the federal action. The district court therefore continued Walker's obligation to file

_____

[2]. The State's supplemental brief, which was filed on January 11, 1993, conceded there had been some prior delays, but argued that Walker's PCRA action was now proceeding rapidly through the state court system, with additional evidentiary hearings set for February 1993. See Supplementary Response on Issue of Exhaustion, January 11, 1993, at 5. The State proposed that the federal court dismiss Walker's habeas action without prejudice to renew it if the state proceedings were not fully resolved within a reasonable time frame. Id. at 6-7.

the offer of proof and citation to authority pending the resolution of the motion to withdraw.

While Walker's federal action was stalled for this reason, Walker's state PCRA action was proceeding. Walker's newly-appointed PCRA counsel was permitted to file a new amended petition, and between December 1992 and April 1993 the state court heard testimony regarding Walker's claims for post-conviction relief. Because there was no transcript of the voir dire that had been conducted for Walker's trial, the state court permitted Walker to present testimony regarding the merits of the alleged ineffective assistance/Batson violations. See App. at 101.

Walker testified that during voir dire, allegedly on October 6, 1986, the assistant district attorney who tried the case against him "had a problem with black males," App. at 102; that the jury ultimately selected was composed of "mainly females," App. at 107; that he was "very unhappy" about the selection process and complained about the process to his trial counsel "several times," App. at 107-08; and that his trial counsel told him to "shut up" and declined to object to the prosecutor's actions. App. at 108. The State objected to this testimony, in part because Walker had made no offer of proof regarding the number of people on the jury, the number of black jurors, and the number of black individuals who were stricken from the jury. Walker's counsel responded that he expected testimony or an affidavit on this issue by Walker's trial counsel. However, when Walker's trial counsel did testify on

April 21, 1993, he was not questioned on any Batson-related issues.

On June 29, 1993, the state court issued an order denying Walker's PCRA claim. The court rejected Walker's ineffective assistance/Batson claim, concluding that Walker "failed to sustain his burden of proof on this issue." Commonwealth v. Walker, Nos. 8601-2553-2575, Memorandum Opinion at 10 (Philadelphia Court of Common Pleas, filed June 29, 1993).

On July 8, 1993, Walker filed an amended federal habeas petition containing approximately thirty-three claims. One of the claims asserted by Walker was "that the makeup of the jury was prejudicial against petitioner." At a hearing before the district court on July 23, 1993, the State argued that Walker's petition did not state a claim for relief, relying upon the testimony and record produced in the PCRA proceeding. Among other things, the State argued that Walker failed to create a record in the PCRA action that would be sufficient to support his ineffective assistance/Batson claim, and asked the federal court to "stay its hand" because the PCRA action, which had concededly been delayed for some time, could "no longer legitimately be called ineffective to protect [Walker's] rights." See App. at 61.

While the issue was pending in the district court, the Pennsylvania Superior Court rejected Walker's appeal and, on February 2, 1994, affirmed the denial of relief under the PCRA. The Superior Court held that Walker's failure to provide the notes of testimony or a statement pursuant to Pa. R. App. P. 1923

in lieu of a transcript precluded appellate review of the claim. See Commonwealth v. Walker, No. 02523 Philadelphia 1993, Memorandum Opinion at 6 (Pa. Super. Ct., filed February 2, 1994). Walker then filed a petition for allocatur to the Pennsylvania Supreme Court.[3]

On February 16, 1994, while Walker's petition in the Pennsylvania Supreme Court was still pending, the federal district court issued its order denying Walker's federal habeas petition. With respect to Walker's ineffective assistance/Batson claim, the court stated that "[t]here is no record of how many blacks were in the venire, how many were struck by the prosecution and the defense, how many blacks sat on the jury, or how many peremptory challenges the prosecutor used. Petitioner's insufficient showing precludes review by this court." Memorandum & Order of February 16, 1994 at 15-16. The district court therefore found that Walker had failed to make a sufficient record in the PCRA proceeding to support the claim.

The district court also commented in another portion of its opinion that:

> [P]etitioner did not avail himself of the Pennsylvania Rules of Appellate Procedure that provide an opportunity to reconstruct the record for purposes of appeal. Pa. R. App. Pro. 1923, 1924. Petitioner also failed to supplement the record during the PCRA proceedings, although he had ample opportunity to do so. Because petitioner does not demonstrate cause for failing to develop the record in state proceedings, he cannot do so for the first time by federal habeas

---

[3]. The Pennsylvania Supreme Court denied Walker's petition for allocatur on November 30, 1994, after Walker's appeal before this court had been filed and fully briefed.

action.  See Keeney v. Tamayo-Reyes, 112 S.Ct. 1715 (1992).

Memorandum & Order of February 16, 1994 at 13.  While this portion of the district court's opinion did not specifically address Walker's ineffective assistance/Batson claim, it appears to have supported the court's conclusion regarding that claim.

The district court granted Walker's motion for a certificate of probable cause, and this appeal followed.  In the appeal, Walker challenges only the district court's dismissal of his claim for habeas relief on the grounds of ineffective assistance of counsel due to trial counsel's failure to object to the prosecutor's practice of racial discrimination in jury selection.

We have jurisdiction over Walker's appeal pursuant to 28 U.S.C. § 1291.  See Story v. Kindt, 26 F.3d 402, 405 (3d Cir.), cert. denied, 115 S. Ct. 593 (1994).  Where a district court has denied a state prisoner's habeas corpus petition without a hearing on the merits, our review is plenary.  See Smith v. Freeman, 892 F.2d 331, 338 (3d Cir. 1989).

II.

Discussion

On appeal, Walker concedes that the record before the district court was insufficient to support either a substantive Batson claim or a claim for ineffective assistance based on defense counsel's failure to raise a Batson claim. He argues, however, that it was unfair for the district court to dismiss his action in light of the State's failure to produce any record of the jury selection despite the district court's prior order requiring it to do so. Walker contends that the district court should have held an evidentiary hearing on the whereabouts of the record of jury selection, and, if necessary, should have given him an opportunity to reconstruct that record.[4]

In response, the State contends that the district court's decision followed the Supreme Court's recent decision in Keeney v. Tamayo-Reyes, 112 S. Ct. 1715 (1992), holding that, absent a showing of cause and prejudice, a federal court may not provide a habeas petitioner with an evidentiary hearing where the petitioner had an adequate opportunity to develop the relevant facts in state court proceedings. Id. at 1721. Thus, the State reasons, Walker's failure to develop the facts relevant to his ineffective assistance/Batson claim during the PCRA proceeding

_____

[4]. Walker cites no relevant authority to support this position. He refers only to Douglas v. California, 372 U.S. 353 (1963), in which the Supreme Court held that a state's failure to provide an indigent criminal defendant with defense counsel in his direct appeal was unconstitutional.

precludes the district court from granting him the opportunity to do so in this habeas proceeding.

Were this the paradigmatic federal habeas proceeding, where the petitioner has fully exhausted state remedies prior to filing a federal habeas petition, the State's argument would be indisputable. Walker's failure to establish a factual record during the PCRA proceeding would be subject to the Tamayo-Reyes cause and prejudice standard, and his inability to demonstrate cause for his failure to develop the factual record during the PCRA action would therefore support the district court's decision to reach the merits of his claims without holding an evidentiary hearing.

This case does not fit neatly within the Tamayo-Reyes rule because the Court there addressed a habeas petitioner's failure to develop a factual record in a post-conviction state proceeding that was exhausted prior to the filing of the federal habeas petition. Id. at 1716-17. In contrast, here the district court concluded that Walker had not demonstrated cause for his failure to develop an adequate state court record to establish his claim by relying, somewhat paradoxically, upon the opportunity presented to Walker at a state proceeding that the district court had excused Walker from exhausting.[5] We thus must consider, apparently as a matter of first impression, the proper application of the Tamayo-Reyes rule in these circumstances.

---

[5]. The district court's waiver of the exhaustion requirement in this case has not been challenged by the State on appeal. Thus, despite our questions about the district court's ruling on that issue, we do not reach it here.

To do so, we return to basic principles. In general, a habeas petition may not be granted "unless it appears that the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b). The exhaustion rule is not jurisdictional. See Story, 26 F.3d at 405. Rather, the rule is "rooted in considerations of federal-state comity." Preiser v. Rodriguez, 411 U.S. 475, 491 (1973). The rule "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518 (1982).[6] The exhaustion rule also serves the secondary purpose of facilitating the creation of a complete factual record to aid the federal courts in their review. Id. at 519.

Similarly, Tamayo-Reyes explained that the cause and prejudice rule regarding evidentiary hearings "appropriately accommodate[s] concerns of finality, comity, judicial economy, and channeling the resolution of claims into the most appropriate forum." Tamayo-Reyes, 112 S. Ct. at 1719. The Court also commented that its rule was "fully consistent with and gives meaning to the requirement of exhaustion" by ensuring that factual issues are addressed by the state courts "in the first instance." Id. at 1720. The exhaustion rule and the Tamayo-

---

[6]. In Keeney v. Tamayo-Reyes, 112 S. Ct. 1715 (1992), the Supreme Court noted that "[c]omity concerns dictate that the requirement of exhaustion is not satisfied by the mere statement of a federal claim in state court. Just as the State must afford the petitioner a full and fair hearing on his federal claim, so must the petitioner afford the State a full and fair opportunity to address and resolve the claim on the merits." Id. at 1720.

Reyes rule are therefore animated in part by the same concerns: comity to the state courts and ensuring that an adequate factual record is developed in the state courts.

On the other hand, the habeas corpus statute provides that exhaustion of state remedies may be excused where there is "an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner." 28 U.S.C. § 2254(b). The principal instance for excusal of exhaustion is inordinate delay rendering the state remedy "effectively unavailable." See Wojtczak v. Fulcomer, 800 F.2d 353, 354 (3d Cir. 1986); see also Story, 26 F.3d at 405-06 (listing cases). In such circumstances, the comity and record-creation concerns of the exhaustion rule yield to the federal courts' obligation to serve as a forum for the protection of the petitioner's fundamental federal rights. See Burkett v. Cunningham, 826 F.2d 1208, 1218 (3d Cir. 1987). It is unclear whether, once the district court determines exhaustion can be excused because of undue delay, the concerns as to comity and record-creation remain sufficiently relevant to require application of the Tamayo-Reyes rule, the issue presented by this appeal.

Because most habeas petitions filed during the pendency of state proceedings are dismissed for lack of exhaustion, no principles have been developed to guide the district court in a habeas proceeding as to reliance on a state evidentiary proceeding that occurred after the exhaustion requirement has been excused. Cf. Wojtczak, 800 F.2d at 356 n.3 (noting that

after federal court found inexcusable delay in Pennsylvania state court post-conviction proceeding and permitted habeas petition to proceed, the state court stayed the post-conviction proceeding pending the disposition of the federal case). The issue would not have arisen in this case had the district court accepted the State's suggestion that it stay all federal proceedings pending the resolution of the state court action once it became apparent that the state PCRA action had been reactivated. As a matter of general practice, we assume that a district court which has excused exhaustion but has not yet embarked upon proceedings of substance will stay its hand once there is reliable evidence that the state action has been reactivated. Cf. Picard v. Connor, 404 U.S. 270, 275 (1971) (noting that states generally must be given the opportunity to pass upon and correct alleged violations of their prisoners' federal rights); see also Burkett, 826 F.2d at 1218 (affirming a district court's dismissal for lack of exhaustion where the petitioner's state case was "proceeding normally," but excusing exhaustion where there was no indication that state court would soon dispose of petitioner's case).

An examination of the Tamayo-Reyes opinion suggests the appropriate manner to resolve the issue presented in this case. Clearly, the Court wanted to limit a defendant's opportunities "to relitigate a conviction." Tamayo-Reyes, 112 S. Ct. at 1719. More significantly, the Court noted that the cause and prejudice rule regarding evidentiary proceedings "serves the interest of judicial economy" by preventing defendants from using the scarce judicial resources of the federal courts to "duplicate

factfinding" that could have been performed in state court. Id. This focus on judicial economy is consistent with other Supreme Court pronouncements regarding the use of the limited resources of the federal judiciary in habeas cases. See Schlup v. Delo, 115 S. Ct. 851, 864 (1995) (suggesting that review of petitions for habeas corpus requires consideration of the "systemic interests in finality, comity, and conservation of judicial resources"); McCleskey v. Zant, 499 U.S. 467, 491 (1991) (noting that federal collateral litigation places a heavy burden on scarce judicial resources, and threatens the capacity of the system to resolve primary disputes).[7]

Thus, a decision to apply the Tamayo-Reyes rule should be guided not only by comity and record-creation concerns but also by an interest in encouraging judicial economy and avoiding duplicative procedures in the state and federal court systems. See United States ex rel. Senk v. Brierley, 471 F.2d 657, 660 (3d Cir. 1973) (record of a then-pending state proceeding should be considered by the district court on remand if the state proceeding was final at the time the district court rendered its decision).

We need not decide in this case what effect should be given to state court findings following a state evidentiary

---

[7]. See also Schneckloth v. Bustamonte, 412 U.S. 218, 260-61 (1973) (Powell, J., concurring) ("To the extent the federal courts are required to re-examine claims on collateral attack, they deprive primary litigants of their prompt availability and mature reflection. After all, the resources of our system are finite: their overextension jeopardizes the care and quality essential to fair adjudication.")

hearing in which the petitioner did not participate because the federal court excused exhaustion.  Walker did participate fully in the state PCRA hearings that occurred after the filing of his habeas petition.  At those hearings, Walker was represented by counsel who called various witnesses, including Walker himself, to testify in Walker's behalf.  Indeed, a review of the transcript of the PCRA proceeding suggests that Walker was given every opportunity to create a record sufficient to establish any constitutional claims.  Having availed himself of that opportunity by appearing and presenting evidence, it would be inconsistent with the interests of judicial economy expressed in Tamayo-Reyes and other Supreme Court decisions regarding federal habeas proceedings to give Walker a second evidentiary hearing in federal court.

We do not hold that a habeas petitioner must participate in a state proceeding that the district court has held need not be exhausted, an issue we leave for another day.  We merely hold that application of the Tamayo-Reyes rule is appropriate in this case, where the state prisoner has appeared at the state hearing and has had an adequate opportunity to develop a record to establish his claim.

We recognize that the district court rendered its decision relying upon the opportunity provided by the state PCRA action while a petition for allocatur in that action was still pending in the Pennsylvania Supreme Court.[8]  Arguably, relying on

---

[8].  The district court may have so acted because of concern about further delay.  The Pennsylvania Supreme Court has recently taken

a state action that is not yet final poses some risk. Regardless, at oral argument before this court, the parties agreed that Walker's petition for allocatur was denied by the Pennsylvania Supreme Court on November 30, 1994, while this appeal was pending. Thus, the district court's reliance upon a then-pending state proceeding in reaching its decision cannot now provide a basis for the reversal of its decision.

We therefore conclude that the district court's dismissal of Walker's ineffective assistance/Batson claim was proper. The state court record is insufficient to establish the claim, and, having fully participated in the PCRA action, Walker is unable to demonstrate cause for his failure to reconstruct that record in state court, nor is there any suggestion that a miscarriage of justice would result from a failure to hold an evidentiary hearing on the issue in the district court. Tamayo-Reyes, 112 S.Ct. at 1721.

(..continued)
steps to reduce the delays in reviewing petitions for allocatur by appointing a committee to address the problem and adopting new internal operating procedures. See Supreme Court Internal Operating Procedures, Pennsylvania Law Weekly, Nov. 7, 1994, at 12; see also Ralph J. Cappy et al., Allocatur Review Must Be Perceived As Objective, Pennsylvania Law Weekly, Nov. 21, 1994, at 6 (first part of Final Report and Recommendation of the Allocatur Study Committee of the State Supreme Court); Ralph J. Cappy et al., High Court Needs Central Staff, Funding, Pennsylvania Law Weekly, Nov. 28, 1994, at 6 (second part of Final Report and Recommendations of the Allocatur Study Committee of the State Supreme Court).

### III.

For the foregoing reasons, we will affirm the district court's order of February 16, 1994, denying Walker's petition for a writ of habeas corpus.

_____