**Stanton T. STORY, Petitioner,**

v.

**Warden Tom KINDT, Respondent and The Attorney General of the Commonwealth of Pennsylvania, Additional Respondent.**

**Civil Action No. 92–281.**

United States District Court,
W.D. Pennsylvania.

Feb. 7, 1997.

Michael D. Bartko, Assistant Federal Public Defender, Pittsburgh, PA.

Stanton T. Story, White Deer, PA.

Thomas N. Farrell, Assistant District Attorney, Pittsburgh, PA.

## OPINION

SENSENICH, United States Magistrate Judge.

On March 12, 1996, Petitioner Stanton Story filed a motion for an evidentiary hearing, which was denied by order dated June 17, 1996 (Doc. # 46). On June 27, 1996, Petitioner filed a Motion to Reconsider Petitioner's Request for an Evidentiary Hearing on the Merits of His Petition (Doc. # 50). For the following reasons, this motion is denied.

This case is here on remand from the Court of Appeals for the Third Circuit, *Story v. Kindt,* 26 F.3d 402 (3d Cir.1994), *cert. denied,* 513 U.S. 1024, 115 S.Ct. 593, 130 L.Ed.2d 506 (1995). The court determined that exhaustion of state remedies should be excused in this case because of extensive delay on the part of the Commonwealth. While the case was pending before the Court of Appeals, a hearing was held on Petitioner's PCHA petition in the Court of Common Pleas of Allegheny County and on March 16, 1994, Judge George Ross denied the petition. The Court of Appeals remanded the case for a determination of the merits of the petition. By a report and recommendation filed today, it is being recommended that Petitioner's petition for writ of habeas corpus be denied.

*Standards for Holding Evidentiary Hearings*

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (the AEDPA), which revises many of the procedures for habeas corpus proceedings. Section 104(4) of the AEDPA amends the section on factual presumptions, redesignated § 2254(e), to read that "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Furthermore:

If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2) (as amended Apr. 24, 1996).

The Commonwealth's Second Supplemental Answer to Petition for Writ of Habeas Corpus and Request for Evidentiary Hearing argues that new section 2254(e)(2) would prohibit the Court from holding an evidentiary hearing, although this case was filed prior to the date the amendments of the AEDPA were enacted, because Petitioner has failed to demonstrate that the claims raised are based on a new rule of constitutional law, that he raises a factual predicate that could not have been previously discovered through

the exercise of due diligence, or that the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found him guilty of the underlying offense. (Doc. # 49, filed June 12, 1996, at 3.) However, as discussed in the report and recommendation, the issue of the retroactivity of the AEDPA is significant only if it would alter the result. *See Berryman v. Morton,* 100 F.3d 1089, 1102–04 (3d Cir.1996); *Meyers v. Gillis,* 93 F.3d 1147, 1149 n. 1 (3d Cir.1996); *Dickerson v. Vaughn,* 90 F.3d 87, 90 (3d Cir.1996). The Court need not determine whether new section 2254(e)(2) applies, because under either standard, Petitioner's request for an evidentiary hearing should be denied.

■ Under the law as it existed prior to the AEDPA amendments, to determine whether a habeas hearing is required, the court "must first determine whether [petitioner] has alleged facts that, if proved, would entitle him to relief." *Smith v. Freeman,* 892 F.2d 331, 338 (3d Cir.1989) (citing *Townsend v. Sain,* 372 U.S. 293, 312, 83 S.Ct. 745, 756–57, 9 L.Ed.2d 770 (1963), *Toomey v. Clark,* 876 F.2d 1433, 1435 (9th Cir.1989)). If so, the court "must then decide whether an evidentiary hearing is necessary to establish the truth of those allegations." *Id.* In the *Smith* case, Smith's factual allegations, taken in the light most favorable to him, if proved, would have established a violation of his constitutional rights in that his guilty plea was not knowing and voluntary because he was mentally incompetent at the time he entered it. Because the state factfinding procedure was not adequate to afford a full and fair hearing (*Townsend* factor 3) when trial counsel misrepresented the conclusions of a psychiatrist who had found Smith incompetent to stand trial, the district court was required to hold an evidentiary hearing on the issue. *Id.* at 339–40.

*Standard of Review*

Section 2254(d) (prior to the April 24, 1996 amendments) requires that a determination of a factual issue, after a hearing on the merits by a state court of competent jurisdiction in a proceeding to which the petitioner

and an officer of the state were parties and which was evidenced by reliable and adequate written indicia, be presumed correct unless one of eight exceptions applies. However, mixed questions of law and fact and conclusions of law have to be reviewed by a federal court *de novo. See Wright v. West,* 505 U.S. 277, 305, 112 S.Ct. 2482, 2497, 120 L.Ed.2d 225 (1992) (O'Connor, J., concurring in the judgment). *See, e.g., Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984) (state court findings of fact concerning counsel's performance subject to presumption of correctness, but ultimate conclusion that counsel was not ineffective requires independent review by federal court).

■ If the four § 2254(d) prerequisites have been met, "written findings made by a state court on a factual issue are presumed to be correct unless [a petitioner] establishes, or it is otherwise shown, or the respondent admits, one or more of eight exceptions." *Reese v. Fulcomer,* 946 F.2d 247, 254 (3d Cir.1991), *cert. denied,* 503 U.S. 988, 112 S.Ct. 1679, 118 L.Ed.2d 396 (1992). "Moreover, the Supreme Court's standards under 28 U.S.C. § 2254(d) set forth that the burden rests on that party attempting to *rebut* the presumption of correctness, not the party assuming it." *Id.* at 255 (citing *Sumner v. Mata,* 449 U.S. 539, 550–51, 101 S.Ct. 764, 770–71, 66 L.Ed.2d 722 (1981)). The four factors are: (1) a hearing on the merits of a factual issue, (2) made by a state court of competent jurisdiction, (3) in a proceeding to which the petitioner and the state were parties and (4) the state court's resolution of the factual dispute is evidenced by a written finding, opinion or other reliable and adequate written indicia.

The United States Supreme Court in *Keeney v. Tamayo–Reyes,* 504 U.S. 1, 112 S.Ct. 1715, 118 L.Ed.2d 318 (1992), held that failure to raise issues in a state court proceeding prevents a habeas petitioner from raising them in federal court unless the "cause and prejudice/fundamental miscarriage of justice" exception is met. *Id.* at 11–12, 112 S.Ct. at 1721. The Court of Appeals for the Ninth Circuit had held that Tamayo–Reyes was entitled to an evidentiary hearing in federal

court because his post-conviction counsel's negligent failure to develop the facts to support his claim that the trial interpreter had failed to translate the *mens rea* element of first degree manslaughter, thereby resulting in an uninformed nolo contendere plea, was not a "deliberate bypass" of state court procedure under *Fay v. Noia*, 372 U.S. 391, 438 (1963). 504 U.S. at 4, 112 S.Ct. at 1717. However, the Supreme Court held that, in light of more recent case law in this area, the appropriate standard is as follows:

> Respondent Tamayo–Reyes is entitled to an evidentiary hearing if he can show cause for his failure to develop the facts in state-court proceedings and actual prejudice resulting from that failure. We also adopt the narrow exception to the cause-and-prejudice requirement: A habeas petitioner's failure to develop a claim in state-court proceedings will be excused and a hearing mandated if he can show that a fundamental miscarriage of justice would result from failure to hold an evidentiary hearing.

*Id.* at 11–12, 112 S.Ct. at 1721 (citing *McCleskey v. Zant*, 499 U.S. 467, 494, 111 S.Ct. 1454, 1470, 113 L.Ed.2d 517 (1991); *Murray v. Carrier*, 477 U.S. 478, 496, 106 S.Ct. 2639, 2649–50, 91 L.Ed.2d 397 (1986)).

The Court of Appeals for the Third Circuit determined in *Walker v. Vaughn*, 53 F.3d 609 (3d Cir.1995), that this rule also applies to hearings that occur after a federal court has held that the exhaustion requirement should be excused. In *Walker*, after a district court held that the delay in Walker's PCHA proceeding was sufficient to waive his exhaustion requirement and directed him to file an amended petition, Walker's newly appointed PCHA counsel filed an amended petition in state court and testimony was taken on Walker's *Batson* claim. Thereafter, the district court, in denying Walker's federal habeas petition, noted that Walker had failed to develop a record to support his claims, including the *Batson* claim and trial counsel's

ineffectiveness for failing to argue the *Batson* issue, in the state court and therefore, pursuant to *Tamayo–Reyes*, he would not be permitted to have another evidentiary hearing to develop the record in federal court. The Court of Appeals affirmed, holding that:

> We need not decide in this case what effect should be given to state court findings following a state evidentiary hearing in which the petitioner did not participate because the federal court excused exhaustion. Walker did participate fully in the state PCHA hearings that occurred after the filing of his habeas petition. At those hearings, Walker was represented by counsel who called various witnesses, including Walker himself, to testify in Walker's behalf. Indeed, a review of the transcript of the PCHA proceeding suggests that Walker was given every opportunity to create a record sufficient to establish any constitutional claims. Having availed himself of that opportunity by appearing and presenting evidence, it would be inconsistent with the interests of judicial economy expressed in *Tamayo–Reyes* and other Supreme Court decisions regarding federal habeas proceedings to give Walker a second evidentiary hearing in federal court.

*Id.* at 615.

Similarly, although the Court of Appeals excused Petitioner's exhaustion requirement in this case on May 27, 1994, an amended PCHA petition had been filed on February 14, 1994, and on February 22, 1994, an evidentiary hearing began.[1] (Answer Ex. 21.) This hearing continued on March 1, 1994, at which time Petitioner questioned his trial counsel, Charles Schwartz, about Schwartz's alleged ineffectiveness at Petitioner's second trial in October 1979. (Answer Ex. 22.) Before the hearing concluded, Petitioner himself read into the record a number of issues he wanted to raise. (Answer Ex. 22 at 23–27, 47–49, 51.) On March 16, 1994, Judge Ross denied the PCHA peti-

---

1. Although Judge Cowen in his dissent commented that "it will take time for the district court to schedule and to conduct a hearing on the ineffective assistance claim," 26 F.3d at 408 (Cowen, J., dissenting), the PCHA court has conducted a hearing on that claim in the interim and, pursuant to *Walker*, even a hearing held after exhaustion has been excused is entitled to a presumption of correctness for factual findings made. *See Carter v. Vaughn*, 62 F.3d 591, 593 n. 5 (3d Cir.1995).

tion. (Answer Ex. 23.) This decision was affirmed by the Pennsylvania Superior Court on April 5, 1995. (Answer Ex. 30.) Petitioner did not file a timely appeal in the Pennsylvania Supreme Court. However, on June 19, 1995, he filed a *pro se* pleading in both the Superior Court and the Supreme Court requesting permission to file an appeal *nunc pro tunc*. (Answer Exs. 31–32.) The Superior Court denied his pleading on June 30, 1996, and the Supreme Court denied the petition to appeal *nunc pro tunc* on September 8, 1995. (Answer Exs. 33–34.)

In this case, the four prerequisites to presumption of correctness have been met, so the burden is on Petitioner to demonstrate one of eight exceptions under § 2254(d) to presuming the state factual findings correct. He argues that this Court should hold an evidentiary hearing because the 1994 PCHA hearing in state court did not provide him a full, fair and adequate opportunity to develop a sufficient record of material facts. Petitioner contends that *Walker* is distinguishable because his PCHA counsel, Jerome DeRiso, was so ineffective that he did not obtain a full, fair and adequate opportunity to develop the record in support of his claims. He argues that Attorney DeRiso did not file an amended petition until three court orders had been issued instructing him to do so (Answer Exs. 14, 18), did not raise all the claims he wanted raised at the hearing, and did not cite Judge Cowen's dissent[2] or social science studies he had referred to in his Superior Court brief or to the PCHA court on the death qualified jury issue. Nor did Attorney DeRiso call an expert to testify as to the propensity of death qualified juries to convict.

Secondly, Petitioner argues that comity would not be affected because the Commonwealth had its opportunity to process his claims but the Commonwealth delayed and provided him with ineffective counsel like Attorney DeRiso. *Walker*, 53 F.3d at 614. Finally, he refers to the principle that the

Court may hold a hearing in its discretion regardless of what occurred at the state level. *Tamayo–Reyes*, 504 U.S. at 23, 112 S.Ct. at 1727 (O'Connor, J., dissenting). He quotes a case from the Eleventh Circuit that held that "*Keeney* did not affect a federal court's discretion to hold an evidentiary hearing on material facts not adequately developed in state court, even if the hearing is not mandatory. More specifically, *Keeney* did not require a party in a habeas proceeding to establish cause and prejudice in order to establish that material facts were not developed in the state court." *Burden v. Zant*, 975 F.2d 771, 775 n. 13 (11th Cir.1992).

Respondents argue that the Court of Appeals' opinion did not hold that Petitioner was entitled to an evidentiary hearing; it "reverse[d] the order dismissing the habeas petition and remand[ed] the case to the district court with directions to entertain Story's petition on the merits." 26 F.3d at 406. Respondents argue that, following *Tamayo–Reyes* and particularly *Walker*, this Court should accept the 1994 PCHA court hearing as sufficient because Petitioner was present and participated in it as Walker did. Respondents argue that *Burden v. Zant*, 975 F.2d 771 (11th Cir.1992), cited by Petitioner, is inapplicable. There, the court determined that the presumption of correctness could not be applied to a report issued by the trial court which stated that Burden's co-defendant had received transactional immunity in return for his testimony when in fact he received use immunity because the facts had not been developed in the state record and the issue was not even relevant until the federal proceedings took place (and it was not a finding of fact but a report on why Burden's death sentence was appropriate). Therefore, the court had ordered an evidentiary hearing to resolve this issue, *Burden v. Zant*, 871 F.2d 956, 957 (11th Cir.1989), and later affirmed the district court's denial of the habeas petition, *Burden v. Zant*, 903 F.2d 1352 (11th Cir.1990).[3]

---

2. Attorney DeRiso could not have raised Judge Cowen's dissent before the PCHA court because the PCHA hearing was held on February 22, 1994 and March 1, 1994 while the Third Circuit opinion was not issued until May 27, 1994.

3. The Supreme Court subsequently reversed and remanded in part, *Burden v. Zant*, 498 U.S. 433, 111 S.Ct. 862, 112 L.Ed.2d 962 (1991), because the Court of Appeals had failed to discuss the trial court's mention of immunity or explain why it was not entitled to a presumption of correct-

Respondents note that Attorney DeRiso's alleged negligence at the PCHA hearing does not provide for "cause" to ignore state court factual findings because Petitioner is not even entitled to counsel at a PCHA hearing. *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *United States v. DeRewal,* 10 F.3d 100 (3d Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994); *Tillett v. Freeman,* 868 F.2d 106 (3d Cir.1989).[4] Furthermore, Petitioner misunderstands the fundamental miscarriage of justice standard, which requires him to prove that it is more likely than not that *no reasonable juror* would have convicted him in light of certain new evidence. *Schlup v. Delo,* 513 U.S. 298, —, 115 S.Ct. 851, 867, 130 L.Ed.2d 808 (1995). They argue that he has not demonstrated that he meets this standard.

Respondents argue that in his Motion for Extension of Time to File An Amended Petition filed on December 20, 1993 (Answer Ex. 16), Petitioner told the PCHA court that he wanted Attorney DeRiso to raise the three claims raised in the original petition in federal court (death qualified jury, ineffectiveness of trial counsel for failing to interview and call witnesses, life sentence applied by Pennsylvania Supreme Court), so he cannot argue that Attorney DeRiso was ineffective for failing to raise additional issues. The amended PCHA petition raised the claims Petitioner wanted to raise. (Answer Ex. 20 at 3–4.)

At the PCHA hearing, Petitioner insisted on representing himself (Answer Ex. 21 at 3–4) and on calling trial counsel Charles Schwartz, but he did not call anyone else. Before the first day of the hearing concluded on February 22, 1994, Judge Ross asked if Petitioner wanted to call any witnesses other than Attorney Schwartz and Petitioner answered: "Basically, just Mr. Schwartz because he is the main one concerning my witnesses. But Your Honor, you were saying that it would be nice to have my wit-

nesses. It is witnesses that I wanted back then at that hearing and this hearing here." (Answer Ex. 21 at 20.) Judge Ross informed Petitioner that it was not the Commonwealth's duty to go out and look for his witnesses, and Petitioner indicated that he would try to locate any witnesses who were in prison. (Answer Ex. 21 at 21.)

When the hearing continued on March 1, 1994, Attorney Schwartz testified concerning the ineffectiveness claim relating to his failure to interview and call witnesses. (Answer Ex. 22 at 4–10.) After Attorney Schwartz left the room (Answer Ex. 22 at 29), Petitioner attempted to place additional issues on the record and the . Commonwealth objected. (Answer Ex. 22 at 21–22.) Petitioner argued that Attorney DeRiso did not consult with him between the February 22 hearing and the March 1 hearing (Answer Ex. 22 at 42) and that he never saw the petition Attorney DeRiso filed until February 25, 1994, when the federal public defender showed it to him. (Answer Ex. 22 at 20.) The court allowed him to read additional issues into the record. (Answer Ex. 22 at 23, 42.)

At the end of the hearing, Petitioner requested that Attorney DeRiso remain on the case and file his Superior Court appeal. (Answer Ex. 22 at 60.) Attorney DeRiso did so, and raised in the appeal the issues that had been preserved in the PCHA petition. (Answer Ex. 26.) Respondents argue that he did not raise other issues because that would have been prohibited by state law. *Commonwealth v. Zillgitt,* 489 Pa. 189, 413 A.2d 1078 (1980).

■ Petitioner has failed to demonstrate cause and prejudice for his failure to develop claims in the 1994 PCHA hearing, and he has failed to demonstrate that the fundamental miscarriage of justice exception applies. The issue of cause "ordinarily turn[s] on whether the prisoner can show that some objective factor external to the defense impeded coun-

---

ness pursuant to § 2254(d). On remand, the Court of Appeals expressly found that the mention of immunity was not entitled to a presumption of correctness for the reasons noted.

4. This standard has been codified in the amendments enacted on April 24, 1996: "The ineffec-

tiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i) (as amended Apr. 24, 1996).

sel's efforts to comply with the State's procedural rule." *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986). Prejudice means that the errors at trial "worked to [petitioner's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494, 106 S.Ct. at 2648 (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982)).

■ Even accepting as true Petitioner's contention that Attorney DeRiso was negligent at the PCHA hearing, Petitioner cannot demonstrate that this would provide him with "cause" to excuse his failure to develop an issue in the state court because he is not entitled to counsel at a PCHA hearing. *Pennsylvania v. Finley,* 481 U.S. 551, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987); *United States v. DeRewal,* 10 F.3d 100 (3d Cir.1993), *cert. denied,* 511 U.S. 1033, 114 S.Ct. 1544, 128 L.Ed.2d 196 (1994); *Tillett v. Freeman,* 868 F.2d 106 (3d Cir.1989). Moreover, he acted as his own counsel and his own negligence cannot establish "ineffectiveness of counsel." In addition, he cannot demonstrate actual prejudice because the claims that were not developed (the death qualification of his jury and all of the issues he read into the record at the end of the hearing) had either been previously litigated by the Pennsylvania courts or can be decided by this Court on the basis of the existing record, without the need for an evidentiary hearing, as explained below.

Finally, he cannot meet the standard for fundamental miscarriage of justice unless he "establish[es] that under the probative evidence he has a colorable claim of actual innocence." *Sawyer v. Whitley,* 505 U.S. 333, 339, 112 S.Ct. 2514, 2519, 120 L.Ed.2d 269 (1992) (quoting *Kuhlmann v. Wilson,* 477 U.S. 436, 454, 106 S.Ct. 2616, 2627, 91 L.Ed.2d 364 (1986)). However, the Court of Appeals has held that, in order to meet this test, a petitioner must present new evidence of innocence and "persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Glass v. Vaughn,* 65 F.3d 13, 16 (3d Cir.1995) (quoting *Schlup v. Delo,* 513 U.S. 298, ——,

115 S.Ct. 851, 868, 130 L.Ed.2d 808 (1995)), *cert. denied,* —— U.S. ——, 116 S.Ct. 1027, 134 L.Ed.2d 106 (1996). In *Glass,* the Court of Appeals assumed without deciding that the actual innocence test would apply in a noncapital case in which a petitioner argued that he committed the crime but was responsible for a lesser degree of guilt because he suffered from post-traumatic stress disorder. Nevertheless, given the evidence that Glass went to the murder scene armed and that he had earlier behaved violently toward the victim, the court could not "conclude that *no* rational juror would have voted to convict Glass of first-degree murder." *Id.* at 17. Petitioner has made no showing that he meets this exacting standard.

*Sixth Amendment Claim Based on Impartiality of Jury*

■ With respect to the death qualified jury issue, Petitioner argued in his Additional Reasons in Support of Motion for a New Trial And/Or Arrest of Judgment filed on March 25, 1980 that his:

> conviction of first degree murder was tainted by the court's error in finding that the death penalty statute was potentially applicable to defendant's case. The specific prejudice which accrued as a result of this error was (1) death-qualification of the jury, a process which in itself tends to prejudice the jury against the defendant by suggesting to them that the defendant's case is one in which the death penalty may be an appropriate sentence, (2) the prosecution's exclusion for cause of veniremen who express an unwillingness to impose the death penalty, thus eliminating the veniremen who, on the basis of empirical studies, would be likely to be relatively favorable to the defendant with respect to issues relating to the determination of guilt.

(Answer Ex. 5 at 2–3.) In his opinion denying Petitioner's post-trial motions, Judge Ross noted that "[i]n his brief defense counsel cited several studies involving the death qualification of a jury. The court found that these treatises were not controlling. Rather the court based its decision on the law of

Pennsylvania as enunciated by the Supreme Court." (Answer Ex. 6 at 15.) [5]

In Petitioner's appeal to the Pennsylvania Supreme Court, he argued that

the court erred in treating this case as one in which the death penalty was potentially applicable. This error prejudiced [Petitioner] in at least four separate respects: (1) the exclusion for cause of veniremen who expressed scruples against imposing the death penalty denied the defendant a jury representing a cross-section of the community and substantially increased the probability of a guilty verdict; (2) the process of death-qualification itself, without regard to any exclusions for cause, tends to prejudice the jury against the defendant by suggesting to them that the defendant's case is one in which the death penalty may be an appropriate sentence; (3) in this particular case, the additional peremptory challenges afforded the Commonwealth operated so as to prejudice [Petitioner; and] (4) a natural concern for avoiding the possibility of the death penalty forces defense counsel to make strategic choices which are likely to reduce the defendant's chances of a favorable determination at the guilt stage of the proceedings.

(Answer Ex. 7 at 24.) Petitioner then cited the case of *Hovey v. Superior Court of Alameda County,* 28 Cal.3d 1, 168 Cal.Rptr. 128, 178–79, 616 P.2d 1301, 1351 (1980), a case in which the "California Supreme Court has recently accepted conclusions resulting from a new empirical study which demonstrates that the process of death-qualification in itself renders prospective jurors more likely to convict a defendant of a Capitol [sic] offense." (Answer Ex. 7 at 25.)

In the section of his brief arguing that "Exclusion for Cause of Veniremen who Stated that they would Automatically Vote

against the Death Penalty Violated [Petitioner's] Right to Jury Trial which is Guaranteed by the Sixth and Fourteenth Amendments of the Federal Constitution," (Answer Ex. 7 at 27), Petitioner cited six social science studies which allegedly supported his claim of the conviction proneness of death qualified juries in general,[6] and requested that the court take "judicial notice" of them. The Pennsylvania Supreme Court refused to do this because "[t]he doctrine of judicial notice cannot be invoked to cover evidentiary gaps of a party who has failed to meet a burden of proof." *Commonwealth v. Story,* 497 Pa. 273, 440 A.2d 488, 495–97 (1981) (Larsen, J., dissenting).

Moreover, Petitioner has never argued, much less demonstrated, that his particular jury was non-neutral, and the Pennsylvania Supreme Court specifically concluded that his jury was impartial. *Id.* 440 A.2d at 489 n. 1. Justice Larsen noted that:

In the instant case, review of the record of the selection of jurors from the venire reveals that, as in the *Hovey* case, no juror was selected from the group which would automatically *impose* the death penalty. Accordingly, whatever conclusions the California Supreme Court might have reached from the post-*Witherspoon* data it studied, those conclusions are similarly of insufficient relevance when considering a jury such as the one chosen in [Petitioner's] case.

*Id.* 440 A.2d at 497. Justice Larsen explained that "[o]f the 12 jurors selected, six were in the 'neutral' or 'indifferent' category (jurors nos. 19, 20, 27, 44, 63 and 76), one was in the 'favor death penalty' group (juror no. 39), and five were in the 'oppose death penalty' group (jurors nos. 3, 23, 34, 41 and 67)." *Id.* 440 A.2d at 497 n. 10.

---

**5.** Although the record in this case is voluminous, the Court has not been provided with Petitioner's brief in support of his post-trial motions. However, the record demonstrates that he did not proffer any social science studies as evidence, nor did he request an evidentiary hearing in the state court.

**6.** Of the studies Petitioner cited, two were deemed "too tentative and fragmentary" to make out a claim of constitutional error in *Witherspoon*

*v. Illinois,* 391 U.S. 510, 517–18, 88 S.Ct. 1770, 1774–75, 20 L.Ed.2d 776 (1968), two more were rejected in *Lockhart v. McCree,* 476 U.S. 162, 171–72, 106 S.Ct. 1758, 1763–64, 90 L.Ed.2d 137 (1986), and one, White, *The Constitutional Invalidity of Convictions Imposed by Death-Qualified Juries,* 58 Cornell L.Rev. 1176, 1185–86 (1973), allegedly "report[s] results from 1971 Harris Poll," which was itself rejected in *McCree.* (Answer Ex. 7 at 28.)

Respondents argue that this finding is entitled to a presumption of correctness, citing *Wainwright v. Witt,* 469 U.S. 412, 426–30, 105 S.Ct. 844, 853–55, 83 L.Ed.2d 841 (1985), and *Deputy v. Taylor,* 19 F.3d 1485, 1498 (3d Cir.), *cert. denied,* 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994). In *Witt,* the Supreme Court has held that a trial court's determination, in voir dire records duly recorded, that a prospective juror was properly excluded for cause under *Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), and *Adams v. Texas,* 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980) is a factual issue entitled to a presumption of correctness under § 2254(d) (now in § 2254(e) pursuant to the AEDPA amendments). The Court did not specifically hold that the same presumption of correctness applies to a state court's determination that the jury a particular defendant was tried by following the death qualification process was an impartial jury, although this is a reasonable argument in light of *Witt.* The Court need not resolve this issue, however, because, even if this determination is not entitled to a presumption of correctness, the Court can review the voir dire proceedings and determine whether Petitioner's jury was impartial as a result of death qualification, without the need for an evidentiary hearing.

Moreover, this claim is not affected by what occurred at the PCHA hearing in 1994 because: 1) the PCHA court did not reach the issue because it had been decided by the Pennsylvania Supreme Court in 1981 and was therefore a previously litigated issue (Answer Ex. 24 at 3–4, Ex. 30 at 3); and 2) Attorney DeRiso's alleged ineffectiveness therefore is not at issue (the fact that he did not cite to Judge Cowen's dissent or any law review articles on the subject of death qualified juries is irrelevant as it would have made no difference). In conclusion, Petitioner failed to develop a record to support his legal argument that the social science studies prove that death qualified juries are more conviction-prone, he failed to argue, much less demonstrate, that his particular jury was conviction-prone, and the Pennsylvania Supreme Court, in discussing this issue, indicated that he would be unable to prove this claim in any event when the record of the voir dire demonstrated that his jury was drawn from a cross section of the population with regard to the death penalty issue, a finding of fact that may be entitled to a presumption of correctness, and even if it is not, the Court can examine the voir dire records and decide this issue without an evidentiary hearing.

In the alternative, Judge Cowen would hold that:

> Petitioner Story argues, *inter alia,* that the state selected a death-qualified jury to try him when, in fact, he was not eligible for capital punishment, thereby violating his Sixth Amendment right to be tried by an impartial jury. This is strictly a legal question which has been briefed and argued before us. We need no further information in order to adjudicate this matter. I would proceed to decide the question in favor of Story, and grant the petition conditioned on Story's not being retried before a non-death-qualified jury within a reasonable period of time. This would render his remaining claims moot.

26 F.3d at 407 (Cowen, J., dissenting) (footnote omitted). Thus, in Judge Cowen's view, because this claim presents a strictly legal issue, an evidentiary hearing is not required.

### Failure to Interview Witnesses

■ Respondents contend that the presumption of correctness applies to the findings of the PCHA court that counsel's reasoning for not calling various witnesses was that they could not be located or would not have been helpful or cooperative and at least two indicated that they refused to testify. The presumption of correctness does not apply to state determinations of ineffectiveness of counsel, but it does apply to the underlying factual determinations of counsel's performance. *Strickland v. Washington,* 466 U.S. 668, 698, 104 S.Ct. 2052, 2070, 80 L.Ed.2d 674 (1984); *Reese,* 946 F.2d at 254.

■ The claims of ineffectiveness of trial counsel for not investigating witnesses can be resolved on the record as it stands, without a need for a hearing. The state court findings of underlying fact and the citations to the record are clear, and the report and recom-

mendation recommends that the Court make the final determination of law that counsel was not ineffective. To have another hearing for Petitioner to ask trial counsel Schwartz why he did not call LaFayette Jones and other witnesses would merely duplicate what already occurred at the state level. Petitioner's counsel, Attorney Bartko, has submitted the affidavit of an investigator that he has been unable to locate the Robert Davis involved in this case, "Jim–Jim" Davis, or Sandy Sommers. (Am.Pet. Ex. A.) Attorney Bartko's investigator found LaFayette Jones, who now claims that he did not see Story the day of the crime, that he does not remember being interviewed by Attorney Schwartz, that he does not recall Story's hairstyle on July 3, 1974 and that he does not know where his family members are now living. (Am.Pet. Ex. A.) S.T. Story died on April 19, 1980. (Am.Pet. Ex. C.) In his request for an evidentiary hearing, Petitioner indicates that he would call LaFayette Jones. (Doc. # 46 at 21.) The record demonstrates that calling LaFayette Jones would not aid Petitioner in establishing the truth of his allegations.

*Resentencing by Pennsylvania Supreme Court*

 Petitioner argues that the Pennsylvania Supreme Court should not have sentenced him to life imprisonment, but rather remanded the case to the trial court for resentencing. Petitioner's argument appears to be that this procedure would have guaranteed his right under Pennsylvania law to "allocution," that is, his "opportunity to make a statement in his own behalf, afford counsel for both parties to present argument, and information relative to sentencing." Pa. R.Crim.P. 1405(a). *See also* 42 Pa.C.S. § 9711(h)(4) ("If the Supreme Court determines that the death penalty must be vacated for ... reason[s other than the lack of support for aggravating circumstances], it shall remand for a new sentencing hearing pursuant to subsections (a) through (g).") As discussed in the report and recommendation, this issue presents a claim of state law not cognizable in federal habeas corpus, and therefore, an evidentiary hearing is not required to resolve it.

*Other Issues*

In addition, Petitioner's amended petition raises the following issues: counsel's failure to object when Detective Robert Miller was not asked about his expert credentials, when hearsay was given by Officers Stotlemyer and Freeman, when irrelevant testimony about the cadillac was given by William Bebler, when Alene Smith's and Nadine Brown's testimony were read into the record in violation of both the Confrontation Clause and the Due Process Clause because only parts were read in, and when the testimony of these witnesses improperly presented a prejudicial hearsay admission that Petitioner was in the presence of two individuals involved in the shooting while he was in Florida; appellate counsel's failure to raise the issue of trial counsel's failure to object to Peter Marone acting as a gun expert, failure to raise trial counsel's failure to argue that testimony of witnesses had been improperly read into the record, failure to raise trial counsel's overruled objections to have stricken the testimony of Detective Swearingen who had taken handwritten notes and thrown them away prior to trial, and failure to raise all issues raised that were not raised by trial counsel. (Doc. # 30 at 26–32.) However, an evidentiary hearing is not required because the record is sufficient to resolve these claims on the merits, and the report and recommendation reviews them and recommends that they be denied. For example, as to the confrontation clause issue, an on-the-record colloquy in chambers can be referenced for the trial court's conclusion that the Commonwealth made diligent efforts to find Alene Smith and Nadine Brown, so reading their testimony in as "unavailable" witnesses was appropriate. (TT Vol. IV at 1463.)

In conclusion, Petitioner's Motion to Reconsider his Request for an Evidentiary Hearing will be denied and an appropriate order will be entered.